Horace S. Baker and Lucille J. Baker v. Commissioner. Huey F. Baker and Bonnie D. Baker v. Commissioner.
Baker v. Commissioner
Docket Nos. 56759, 56760.
United States Tax Court
T.C. Memo 1956-241; 1956 Tax Ct. Memo LEXIS 52; 15 T.C.M. (CCH) 1241; T.C.M. (RIA) 56241; October 31, 1956
*52 Prior to 1948 petitioners, Huey F. and Horace S. Baker, were engaged in the electrical appliance business as partners, with a 2/3 and 1/3 interest therein, respectively. They had purchased and sold a quantity of war surplus electrical equipment in the conduct of that business. In October 1948, they sold the assets of the partnership to a corporation, except for the remaining items of war surplus electrical equipment which Huey purchased for the sum of $10,000 from the partnership. He shortly thereafter sold a 1/3 interest to Horace. During 1949, 1950, and 1951, they sold such war surplus electrical equipment for a substantial profit. Held, Huey and Horace were engaged in the business of selling war surplus electrical equipment in 1949, 1950, and 1951, and the equipment sold during such years was stock in trade of a business operation and gain realized thereon was taxable as ordinary income. Gordon C. Carson, Esq., Liberty Bank Building, Savannah, Ga., for the petitioners. Frederick T. Carney, Esq., for the respondent. RICE
Memorandum Findings of Fact and Opinion These consolidated proceedings involve the following deficiencies in income tax: Docket
No.
Year
Deficiency
56759
1949
$ 224.08
1950
1,748.38
1951
583.90
56760
1949
574.20
1950
5,382.12
1951
1,509.54
*53 The sole issue is whether the profit realized by petitioners, Horace S. and Huey F. Baker, from the sale of war surplus electrical equipment during the years in issue was taxable as ordinary income or as capital gains. Some of the facts were stipulated. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Horace S. Baker and his wife, Lucille J. Baker, were residents of Savannah, Georgia, during the years in issue. Huey F. Baker and his wife, Bonnie D. Baker, were residents of Savannah, Georgia, during 1949 and 1950; in 1951 they were residents of Orlando, Florida. The joint income tax returns for each couple for all of the years in issue were filed with the former collector of internal revenue for the district of Georgia. Huey F. and Horace S. Baker were brothers. In 1943 they organized a partnership, Savannah Armature Works, to engage in the sale of electrical appliances at wholesale and retail and the repair of such appliances. In 1945 they organized a second partnership, Savannah Refrigeration Supply Company, to engage in the wholesale air conditioning, heating, and refrigeration appliance business. That partnership performed *54 no installation or repair work. In both of the aforementioned partnerships, Huey owned a 2/3 interest and Horace a 1/3 interest. In 1947 Savannah Armature Works purchased a quantity of war surplus electrical equipment for the sum of $145,000. The partnership conducted extensive sales activities to sell the equipment. In mid-1948 Huey and Horace decided to withdraw from the electrical appliance business and devote their full time to the refrigeration business. Pursuant to that plan they interested Dawson and Roesel in acquiring the business of the Savannah Armature Works. To facilitate the purchase of the assets of that partnership by Dawson and Roesel, they caused a corporation to be formed known as the Savannah Armature Works, Inc. The corporation had 100 shares of non-par stock. Forty-eight of such shares were sold to Dawson and Roesel for $30,000. They paid $6,000 in cash for the stock and gave a promissory note of $24,000 for the balance. Huey held 47 shares of the corporation's stock and also held the 48 shares owned by Dawson and Roesel as collateral. Horace owned 5 shares of the corporation's stock but was the equitable owner of 1/3 of the total 52 shares which were not *55 sold to Dawson and Roesel. During 1949 and 1950, Huey was president of the corporation and drew a salary from it. All assets of the partnership were transferred to the new corporation except for the remaining items of war surplus electrical equipment which had not been sold. That equipment was purchased by Huey for $10,000, such price being its appraised value. Huey purchased the equipment with the intention of selling it. Several months after he acquired it, he sold a 1/3 interest therein to Horace. During the years in issue approximately 180 separate sales of the equipment were made for a total price of approximately $62,000. Most items were sold through the corporation, Savannah Armature Works, Inc. Previous customers of the partnership knew that the equipment was available and many sales were made to such customers. In addition, Dawson and Roesel called on customers and much of the equipment was sold through their efforts. Huey personally sold some of the equipment. In most instances it was necessary to refurbish or repair the equipment. The corporation did such work and billed the buyer directly. It remitted the sales price of the equipment to Huey and Horace after deducting *56 its charges for repair and refurbishing work. Savannah Armature Works, Inc., was dissolved early in 1951. Sales of war surplus equipment totalling approximately $13,000 were made by Huey and Horace thereafter during the year 1951 and the billing for such sales was made by Savannah Refrigeration Supply Company. On their returns for the years in issue, Huey and Horace reported the gains realized on the sale of war surplus electrical equipment as long-term capital gains. The respondent determined that such gains were taxable as ordinary income. Huey and Horace were engaged in the business of selling war surplus electrical equipment during the years in issue, and the equipment sold during such period was property held for sale to customers in the ordinary course of that business. Opinion RICE, Judge: This case presents once more the question of whether property sold by taxpayers was a capital asset, therefore entitling the profit realized on its sale to be taxed as capital gains. Section 117(a)(1)(A) [1] excludes from the definition of capital asset, stock in trade of a taxpayer, or property held by him primarily for sale to customers in the ordinary course of his trade or business. *57 Whether the electrical equipment sold by the Baker brothers was a capital asset in their hands or whether it was held for sale in the ordinary course of a business operation is a question of fact. (C.A. 5, 1951), affirming a Memorandum Opinion of this Court dated February 28, 1950 [, certiorari denied . In considering that factual question, this Court and the Courts of Appeals have indicated certain tests which are helpful in deciding the question. Among those tests are: (1) the frequency of sales of property as opposed to isolated *58 sales or transactions; (2) the activity of the seller or those acting under his instructions or in his behalf such as making improvements to the property and advertising it to attract purchasers; (3) the nature and extent of the taxpayer's business; (4) the purchase for which the property was originally acquired; and (5) the purpose for which the property was held during the period in question. (C.A. 5, 1950). As the Court of Appeals noted in (C.A. 5, 1938), affirming a Memorandum Opinion of this Court dated October 5, 1936, business activity on the part of a taxpayer means more than a casual sale of property held primarily for investment. Business "implies that one is kept more or less busy, that the activity is an occupation. It need not be one's sole occupation, nor take all his time." Weighing the facts here against the aforementioned tests, and upon a careful consideration of the entire record, we are satisfied and have so found as a fact that the war surplus electrical equipment sold by the Baker brothers during the years in issue was the stock in trade of a business *59 venture and was property held for sale to customers in the ordinary course thereof. To sell the equipment to any purchaser who could be found was the purpose for which it was acquired and held during the years in issue. Petitioner, Huey F. Baker, testified that the surplus equipment was originally acquired by him from the partnership incident to that business's liquidation and the transfer of all of its other assets to a newly formed corporation. That, no doubt, was one purpose which prompted his buying it from the partnership. But we think the record clearly establishes that he had another purpose in acquiring the equipment, viz., to sell it as he could find customers to buy it; that he never deviated from that purpose; and that the substantial number of sales and the activity of the corporation, and Roesel and Dawson as his agents in selling the equipment, was a business operation. He testified also that when he purchased the property "it looked then as if it might be a loss." One does not normally invest in prospective losses. The petitioners argue that the sales in question were a liquidation of property acquired and held as an investment. They particularly emphasize the liquidating *60 nature of the sales and point out that the stock of war surplus equipment was never replenished as sales were made. There is no magic in calling the disposal of property a liquidation, for even if that be so, the frequency of sales, the substantiality of sales activities, and the manner in which property is disposed of, even though a liquidation, can none the less result in the conduct of a business. (C.A. 5, 1944), affirming a Memorandum Opinion of this Court dated August 31, 1943 [. In any event, we do not think that the sales in question here were a liquidation in the commonly understood meaning of that word. A liquidation first of all presupposes the holding of investment property. Huey purchased the property in question, not as an investment but with the intention of holding it out for immediate sale to any willing purchaser. The significant fact of this record is that the Baker brothers were actively engaged in the business of selling war surplus electrical equipment in partnership before October 1948, and they were likewise so engaged during the years in issue. To accord capital gains treatment *61 to the profits arising from such a venture as that carried on by them during the period in question seems to us repugnant to the essential purpose of the capital gains provisions of the Code. As the Court of Appeals noted in (C.A. 5, 1954): "Congress intended to alleviate the burden on a taxpayer whose property has increased in value over a long period of time. When, however, such a taxpayer endeavors still further to increase his profits by engaging in a business separable from his investment, it is not unfair that his gain should be taxed as ordinary income." Here the petitioners never held the property as an investment but only as the stock in trade of a business operation. The gains realized from its sale were properly determined by respondent to be taxable as ordinary income. Decisions will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; * * *↩